UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SAIO BARZEE,

                    Plaintiff,

                -v-                5:24-CV-1237 (DNH/MJK)

KYLE HARRINGTON, ERNES
MERDANOVIC, and SUSAN C.
CAREY,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                      OF COUNSEL:

SAIO BARZEE
Plaintiff, Pro Se
25-B-0694
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

COSTELLO, COONEY & FEARON, PLLC    PAUL G. FERRARA, ESQ.
Attorneys for Defendant Susan Carey     DANIEL R. ROSE, ESQ.
211 W. Jefferson Street
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

## DECISION & ORDER

## I.   INTRODUCTION

On October 9, 2024, *pro se* plaintiff Saio Barzee ("Barzee" or "plaintiff"),

who is currently in state custody at Upstate Correctional Facility, filed this 42

U.S.C. § 1983 action alleging that defendants' conduct in connection with his November 15, 2023, arrest and prosecution for weapons charges violated his civil rights under the U.S. Constitution and related state law.[1]  Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application").  Dkt. Nos. 2, 6.

On November 12, 2024, U.S. Magistrate Judge Mitchell J. Katz granted plaintiff's IFP Application and, after conducting an initial review of the complaint, advised by Report & Recommendation ("R&R") that most of plaintiff's claims should be dismissed but that plaintiff's § 1983 fair trial claims against Cicero police officers Ernes Merdanovic ("Merdanovic") and Kyle Harrington ("Harrington"), as well as his state-law legal malpractice claim against attorney Susan Carey ("Attorney Carey"), should survive initial review.  Dkt. No. 5.

Plaintiff sought and received additional time to object to Judge Katz's R&R.  *See* Dkt. Nos. 12–13.  Thereafter, plaintiff timely filed objections, *see* Dkt. No. 14, but the Court overruled them and adopted Judge Katz's R&R. Dkt. No. 17.  Accordingly, plaintiff's claims against defendants Merdanovic, Harrington, and Attorney Carey proceeded to discovery.

---

[1]  Plaintiff initially named as defendants several of his former restaurant co-workers, five Cicero police officers, his former criminal defense attorney Susan Carey, Onondaga County District Attorney William Fitzpatrick, Onondaga County Forensic Laboratories analyst Tamara Danner, New York State Parole Revocation Specialist Michael Wright, and Aaron M. Wilson, Jr.  Dkt. No. 1.

On January 16, 2026, Attorney Carey moved under Federal Rule of Procedure ("Rule") 56 for summary judgment on plaintiff's state-law legal malpractice claim. Dkt. No. 61. Four days after plaintiff's deadline to respond to Attorney Carey's motion expired, plaintiff filed a three-part request for "an extension of time to respond to the [m]otion, . . . for it to be stricken[,] and for the Court to appoint him an attorney." Dkt. No. 70. In response, the Court granted plaintiff a one-month extension of the opposition deadline. Dkt. No. 71. Accordingly, plaintiff's response deadline was reset to March 6, 2026. *Id.*

March 6th came and went without a response from plaintiff. Later, on March 13, 2026, plaintiff requested a second extension of time in which to respond to Attorney Carey's motion. Dkt. No. 77. In response, the Court granted plaintiff's request. Dkt. No. 80. Accordingly, plaintiff's opposition deadline was reset to March 23, 2026. *Id.*

As before, plaintiff failed to timely respond. Then, on March 30, 2026, plaintiff opposed Attorney Carey's motion and cross-moved[2] for summary judgment. Dkt. Nos. 85–87. Plaintiff's submissions included: (1) a response to Attorney Carey's statement of undisputed facts, Dkt. No. 85; (2) a notice of motion for summary judgment, Dkt. No. 86 at 1–2; (3) a memorandum of law in

---

[2] Plaintiff's response included opposition papers *and* a notice of motion for summary judgment, *see* Dkt. No. 86, but for reasons not entirely clear from the record, the Clerk only docketed plaintiff's submissions as a response in opposition to Attorney Carey's motion. The Court will consider plaintiff's cross-motion *infra*.

opposition to Attorney Carey's motion for summary judgment, *id.* at 3–11; (4) a supporting affirmation, *id.* at 11–13; (5) a "statement of undisputed material facts," Dkt. No. 87; and (6) a renewed motion to appoint counsel, Dkt. No. 88.

Attached to plaintiff's statement of undisputed material facts were three pages of a seventeen-page document entitled "Parolee's Legal Defense in General." *See* Dkt. No. 87 at 4–6. The Clerk's Office alerted plaintiff that his filing was missing pages and provided him an opportunity to cure the filing deficiency. Case No. 5:24-CV-1237, Dkt., Text Notice (Apr. 9, 2026).

Thereafter, plaintiff advised the Court that the remaining pages of "Parolee's Legal Defense in General" had been lost during his incarceration and, instead, plaintiff offered three other documents for the Court's consideration:

> [1] A complete copy of the one[-]page original complaint form that plaintiff had submitted to the Attorney Grievance Committee[;]
>
> [2] [a] complete copy of the three pages of the "ADDITIONAL WRITTEN COMMENTS" submitted by plaintiff to [the] Attorney Grievance Committee on July 3[ ], 2024[;] [and]
>
> [3] [a]n uncomplete copy of [18] pages of plaintiff's "summary of parolee's defense and legal objections" which was submitted to the Board of Parole on [January 3, 2024].

Dkt. No. 91.

In a separate submission, *see* Dkt. No. 92, plaintiff also sought leave to file a sur-reply in response to certain arguments raised in Attorney Carey's reply briefing, *see* Dkt. No. 89. By text order, the Court denied plaintiff's request to file a sur-reply along with his earlier request for counsel. Dkt. No. 94.

The cross-motions have been fully briefed, Dkt. Nos. 85–87, 89, 91, and will be considered on the basis of the submissions without oral argument.

## II.   BACKGROUND[3]

In September of 2023, plaintiff began working at a Wendy's fast-food restaurant in Cicero, New York.  Dkt No. 1 ("Compl.") ¶ 1.  At the time, plaintiff was on state parole.  Dkt. No. 61-35 ("Carey SMF") ¶¶ 25–26; Dkt. No. 85 ("Pl.'s Resp. SMF") ¶¶ 25–26.  After a dispute with a co-worker, plaintiff quit his job at Wendy's on October 29, 2023.  Compl. ¶¶ 20–33.

On November 15, 2023, plaintiff returned to the Wendy's location to inform his former co-workers "that he was either going to commence with filing criminal charges against them and or file a lawsuit for the unjustifiable slander of his character."  Compl. ¶ 33.

Later that night, Cicero police officers arrested plaintiff and charged him with criminal possession of a weapon in the 3rd degree, criminal possession of a weapon in the 4th degree, criminal possession of a firearm, and menacing in

---

[3] The following facts are drawn from plaintiff's verified complaint, *see* Dkt. No. 1, and the parties' statements of material facts and the attached exhibits, *see* Dkt. Nos. 61-35, 87, 91.  The facts are undisputed unless otherwise noted.

the 2nd degree. Carey SMF ¶ 28; Dkt. No. 61-1 ("Ferrara Decl."), Ex. 10, Dkt. No. 61-12[4]; Compl. ¶ 33.

According to plaintiff, his former co-workers and one of their significant others had falsely reported to the police that plaintiff had threatened them with a loaded firearm during his visit to Wendy's earlier that evening. *See* Compl. ¶¶ 34–35, 39 (alleging that plaintiff's former co-workers and a former co-worker's partner lied to police about the events of November 15, 2023); Dkt. No. 61-12 at 2 (felony complaint, accusing plaintiff of threatening a victim with a loaded firearm at Wendy's).

Plaintiff denies that he threatened his former co-workers with a firearm. Compl. ¶¶ 34–35, 38–39; Pl.'s Add'l SMF ¶ 16. Through the state-court assigned counsel program, criminal defense attorney David E. Zukher, Esq. ("Attorney Zukher") was initially appointed to represent plaintiff in the criminal proceedings. Compl. ¶ 31. Attorney Zukher waived a preliminary hearing in Cicero Town Court and plaintiff's case was transferred to Onondaga County Court. *Id.*

Thereafter, plaintiff was detained at the Onondaga County Justice Center (the "OCJC") without bail. Carey SMF ¶ 30. In addition to the criminal

---

[4] Attorney Carey has submitted plaintiff's arrest report and felony complaint as exhibits. *See* Dkt. No. 61-12. Both contained unredacted personal identifiers. *Id.* at 1–2. Attorney Carey is reminded of her obligation to redact certain personally identifiable information pursuant to Federal Rule of Civil Procedure 5.2(a) and Local Rule 5.2(a), and she is cautioned that future non-compliant filings will be stricken.

charges he faced from his arrest, the New York State Board of Parole charged plaintiff with several parole violations.[5]  Carey SMF ¶ 29; *see* Dkt. No. 61-14.

By letter dated November 16, 2023, the Onondaga District Attorney's Office (the "OCDA") informed plaintiff of the criminal charges pending against him and advised him that those charges would be submitted to a Grand Jury to consider an indictment.  Carey SMF ¶ 32; *see also* Dkt. No. 61-19 at 1.  The OCDA's notice directed plaintiff to immediately notify the OCDA if he wished to testify before the Grand Jury.  Dkt. No. 61-19 at 1.  Around this time, Attorney Zukher was relieved as counsel for plaintiff.  Carey SMF ¶ 33.

A short time later, on November 27, 2023, Attorney Carey was assigned to represent plaintiff in the criminal proceedings.  Carey SMF ¶ 34.  Attorney Carey promptly met with Attorney Zukher to discuss plaintiff's case and obtain a copy of the case file.  *Id.* ¶¶ 34, 36.  Additionally, Attorney Carey exchanged e-mails with the OCDA assistant district attorney assigned to plaintiff's case, John Walker ("ADA Walker").  *Id.* ¶ 37; Dkt. No. 61-22.

ADA Walker advised Attorney Carey that the Cicero Police Department had undercharged plaintiff and that the OCDA intended to present a heightened charge, *i.e.*, criminal possession of a weapon in the 2nd degree, to the Grand Jury.  Carey SMF ¶ 37.  Plaintiff faced eight years in prison if convicted

---

[5] Attorney Spencer Goldberg, Esq. ("Attorney Goldberg") represented plaintiff in his parole revocation proceedings.  Carey SMF ¶ 35.

of the heightened charge, in addition to any term of imprisonment that might be imposed for his parole violations. *Id.* ADA Walker extended a pre-indictment plea offer to plaintiff that required him to plead guilty to attempted criminal possession of a weapon in the 2nd degree in exchange for a five-year prison sentence followed by five years of post-release supervision. *Id.*

According to Attorney Carey, she attempted to visit plaintiff at the OCJC on December 2, 2023, but she was unable to enter the building due to an emergency in the building. Carey SMF ¶ 40. Plaintiff disputes that Attorney Carey attempted to visit him that day, as the only evidence of her visit is her own, self-serving statement. Pl.'s Resp. SMF ¶ 40.

Either way, by letter dated December 4, 2023, Attorney Carey advised plaintiff that she had been assigned to represent plaintiff in his criminal case and invited him to call her. Carey SMF ¶ 41. Attorney Carey's letter further advised plaintiff of the pre-indictment plea offer, and informed him that he was not required to accept it. *Id.*

On December 8, 2023, Attorney Carey claims that plaintiff called her and informed her that he did not wish to accept the plea offer. Carey SMF ¶ 42 (citing billing timesheet). Plaintiff disputes this, citing his call records from

OCJC indicating that he made no calls on that date.  Pl.'s Resp. SMF ¶ 42, p. 15.[6]

According to Attorney Carey, she attempted to meet with plaintiff again on December 10, 2023, but when she reached his housing unit at OCJC he refused to engage in conversation, stating only that he wanted a new attorney and that he would not accept the plea offer.  Carey SMF ¶ 43.  Attorney Carey left without otherwise conferring with plaintiff.  *Id.*

Plaintiff disputes that Attorney Carey went to visit him on that date, citing a December 14, 2023, e-mail from Attorney Carey to Attorney Goldberg (plaintiff's parole attorney) in which Attorney Carey states that she had not "been to see [plaintiff]" because she had just started a trial in another case, and she had been sick.  Dkt. No. 61-24 at 3; Pl.'s Resp. SMF ¶ 43; Carey SMF ¶ 34.  According to plaintiff, he had left multiple voicemails for Attorney Carey by this point, but she had failed to respond to them.  Dkt. No. 87 ("Pl.'s Add'l SMF") ¶ 6.

Plaintiff's final parole revocation hearing was held on December 21, 2023.  Carey SMF ¶ 44; Dkt. No. 61-24 at 2.  The following day, plaintiff's parole attorney told Attorney Carey that he would be "very surprised if [plaintiff] gets anything less than . . . two years and seven months [of imprisonment] . . .

---

[6] Plaintiff has appended evidentiary materials to his response to Attorney Carey's statement of material facts.  Citations to the attachments will correspond to the CM/ECF generated pagination.

on the parole side," and that he "wish[ed] there were some way to convince [plaintiff]" to take the OCDA's pre-indictment plea offer.  Dkt. No. 61-24 at 2.

On or about January 9, 2024, Attorney Carey received written notice from the OCDA, pursuant to Criminal Procedure Law § 190.50, "that a charge of criminal possession of weapon in the 2nd degree was being submitted to the Grand Jury and in the event [p]laintiff wished to testify before the Grand Jury, a time ha[d] been reserved for him provided he executed a Waiver of Immunity."  Carey SMF ¶ 45.  According to Attorney Carey, it was her "legal judgment and strategy not to allow plaintiff to testify before the Grand Jury."  Carey SMF ¶ 47.

Plaintiff received the same notice pursuant to Criminal Procedure Law §190.50, *Id.* ¶ 46, but according to him, it "was served upon him after the timeline which the notice was intended for."  Pl.'s Resp. SMF ¶ 46.  Around that same time, the administrative law judge presiding over plaintiff's parole revocation proceedings revoked plaintiff's parole and "imposed a time assessment of maximum expiration."  Carey SMF ¶ 48.

A few weeks later, on January 24, 2024, Attorney Carey learned that the Grand Jury had returned an indictment against plaintiff, and that plaintiff's arraignment was scheduled for February 8, 2024, before Onondaga County Court Judge Theodore Limpert.  Carey SMF ¶¶ 50–51.  Attorney Carey claims that she promptly advised plaintiff of the indictment and the arraignment, *id.*

¶ 52, but according to plaintiff, he did not learn of his indictment until the morning of his arraignment, Pl.'s Resp. SMF ¶ 52.

The parties' narratives continue to diverge with respect to the events of February 8, 2024. Attorney Carey claims that, on that date, she attempted to meet with plaintiff prior to his arraignment to review discovery materials, discuss her communications with Attorney Goldberg, and explain procedural matters, but that plaintiff refused to speak with her. Carey SMF ¶ 53.

Plaintiff disputes this. According to plaintiff, he *did* speak with Attorney Carey outside the courtroom prior to his arraignment. Pl.'s Resp. SMF ¶ 53. At that time, he expressed his frustration with Attorney Carey's representation and advised her that he wanted a new attorney. *Id.*

Once in the courtroom, Attorney Carey claims that plaintiff "repeatedly stated in a loud voice that he wanted a new lawyer." Carey SMF ¶ 54. After that, Attorney Carey requested to be relieved as counsel, advising Judge Limpert and ADA Walker in open court that plaintiff "refused to communicate with her[,]" and that "the attorney-client relationship had irretrievably broken down." Carey SMF ¶ 55.

Plaintiff recalls it differently. According to him, Attorney Carey was already engaged in a sidebar discussion with Judge Limpert and ADA Walker when he entered the courtroom, and he overheard Attorney Carey informing Judge Limpert of a nonexistent conflict of interest. Pl.'s Resp. SMF ¶ 54. At

that point, plaintiff informed Judge Limpert that Attorney Carey was ineffective, and that he was dissatisfied with her representation. *Id.*

In any event, Judge Limpert relieved Attorney Carey as counsel. Carey SMF ¶ 55. Attorney Carey provided no further services to plaintiff, and criminal defense attorney Brendan Rigby, Esq. was assigned to take over plaintiff's representation in the criminal matter. Carey SMF ¶¶ 56–57.

In April 2024, plaintiff lodged a complaint against Attorney Carey with the Attorney Grievance Committee, alleging that she violated the Rules of Professional Conduct by failing to respond to his calls and by denying him the right to testify before the Grand Jury. Dkt. 91 3–6.

Attorney Carey denied plaintiff's allegations and maintained that she represented plaintiff professionally and to the best of her abilities. Pl.'s Resp. at 9–11. The Attorney Grievance Committee sided with Attorney Carey, informing plaintiff on October 25, 2024, that no disciplinary action would be taken in connection with his grievance. *Id.* at 38–39.

In December 2024, plaintiff was tried before a jury on two charges: criminal possession of a weapon in the 2nd degree and menacing in the 2nd degree. Carey SMF ¶¶ 58–59. Plaintiff represented himself *pro se* at trial, *id.* ¶ 60, and was convicted on both counts. *Id.* ¶ 61.

On February 3, 2025, Judge Limpert sentenced plaintiff to 12 years of imprisonment followed by 5 years of post-release supervision on the weapons

charge, and 364 days of imprisonment on the menacing charge. Carey SMF ¶ 62; Dkt. No. 61-32 at 2. Plaintiff filed a notice of appeal from his conviction and sentence on February 25, 2025. Carey SMF ¶ 30 (citing Dkt. No. 61-33).

## III. LEGAL STANDARD

The entry of summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant. *Id.* at 255. Even so, there is no genuine issue for trial "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) (cleaned up).

Cross-motions for summary judgment do not alter this standard, but simply require the court to determine whether either party is entitled to judgment as a matter of law on facts that are not in dispute. *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Terwilliger v. Terwilliger*, 206 F.3d 240, 244 (2d Cir. 2000)).

## IV.   DISCUSSION

Before reaching the merits of the motions, there is a preliminary matter for the Court to address.

### A.   **Plaintiff's *Pro Se* Status**

Plaintiff is *pro se*, or self-represented.  "Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training."  *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

To that end, the Second Circuit has held that "[t]he failure of a district court to apprise *pro se* litigants of the consequences of failing to respond to a motion for summary judgment is ordinarily grounds for reversal."  *McPherson v. Coombe*, 174 F.3d 276, 281 (2d Cir. 1999) (internal quotation marks omitted).  "However, 'a District Court need not advise a *pro se* litigant as to the nature of summary judgment where an opposing party has already provided the litigant with the requisite notice."  *Id.*

Rule 56.2 of this District's Local Rules require a party moving for summary judgment against a *pro se* litigant to do just that.  *See* L.R. 56.2 (requiring moving party to "inform the *pro se* litigant of the consequences of failing to respond to the summary judgment motion").

Upon review of the record, it does not appear that Attorney Carey complied with her obligations under Rule 56.2. *See* Dkt. Nos. 62, 65. Nevertheless, the failure to affirmatively notify a *pro se* litigant of the consequences of a motion for summary judgment "will be deemed harmless" where the "*pro se* litigant has demonstrated a clear understanding of the nature and consequences of a summary judgment motion and the need to set forth all available evidence demonstrating a genuine dispute over material facts." *Jova v. Smith*, 582 F.3d 410, 414 (2d Cir. 2009) (internal quotation omitted).

Aside from plaintiff's initial filing deficiency, *See* Dkt. No. 87, which was timely addressed, *see* Dkt. No. 91, plaintiff's submissions demonstrate a clear understanding of the nature and consequences of a motion for summary judgment.

For example, plaintiff filed a response to Attorney Carey's statement of material facts that largely complied with the requirements of Local Rule 56.1(b). *See* Dkt. No. 85 (citing L.R. 56.1); *see also* L.R. 56.1(b). Additionally, plaintiff submitted a notice of cross-motion, an 8-page memorandum of law, a supporting affirmation, a statement of undisputed material facts, and several exhibits. *See* Dkt. Nos. 85–87, 91.

Given plaintiff's clear understanding of the procedural posture, any lack of affirmative notice was harmless. Accordingly, the Court will proceed to the

merits of the motions and, in doing so, will consider all of plaintiff's filings. *See* Dkt. Nos. 85–87, 91.

## B.   The Merits

Plaintiff's sole claim against Attorney Carey is a state-law legal malpractice claim.  Dkt. No.  17.  Attorney Carey has moved for summary judgment on that claim.  Dkt. No. 61-36 ("Carey Mem.").  Plaintiff opposed Attorney Carey's motion for summary judgment and cross-moved for summary judgment on his legal malpractice claim *and* his newly raised state-law claims for fraud and violations of the New York Judiciary Law.  Dkt. No. 86 ("Pl.'s Opp.").

### 1.   Newly Asserted Claims

Even though plaintiff's only remaining claim against Attorney Carey is for state-law legal malpractice, *see* Dkt. No. 17, his cross-motion appears to seek summary judgment on two additional claims—namely, a state-law fraud claim and state-law claim for violations of § 487 of the New York Judiciary Law (the "Judiciary Law").  Pl.'s Opp. at 1.

Generally speaking, "[a] party cannot assert a cause of action for the first time in response to a summary judgment motion."  *Greenidge v. Allstate Ins. Co.*, 312 F. Supp. 2d 430, 436–37 (S.D.N.Y. 2004), *aff'd*, 446 F.3d 356 (2d Cir. 2006); *see also Rojo v. Deutsche Bank,* 487 F. App'x 586, 588 (2d Cir. 2012) (summary order) (noting same).  This is true even where the party is *pro se.* *See Cooney v. Consol. Edison*, 220 F. Supp. 2d 241, 253 (S.D.N.Y. 2002)

(declining to address new claims raised in *pro se* litigant's response to a summary judgment motion), *aff'd*, 63 F. App'x 579 (2d Cir. 2003) (summary order).

Even so, plaintiff argues that the Court should strike Attorney Carey's answer, construe his verified pleading liberally to include the two additional state-law claims for fraud and violations of § 487 of the Judiciary Law, and grant summary judgment in his favor on those claims. *See* Pl.'s Opp. at 3, ¶ 2.

For the reasons that follow, plaintiff's requests will be denied.

### i. **Fraud**

Relying on the allegations in his verified complaint, plaintiff argues that he is entitled to summary judgment against Attorney Carey for state-law fraud. Pl.'s Opp. at 3–4, ¶¶ 2–4. As an initial matter and as plaintiff acknowledges, *see* Pl.'s Opp. at 4, ¶¶ 3, a state-law fraud claim is considered duplicative or redundant of a state-law legal malpractice claim unless "the fraud cause of action [i]s based upon tortious conduct independent of the alleged malpractice." *Rupolo v. Fish*, 87 A.D.3d 684, 685–86 (2d Dep't 2011).

"The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009). "[A] fraud claim requires the plaintiff to have relied upon a misrepresentation by a defendant to his or her detriment." *Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485, 493

- 17 -

(N.Y. 2016). Consequently, a fraud claim will not lie "where a non-plaintiff third party is alleged to have relied on the misrepresentations in a manner that caused injury to the plaintiff." *Id.* at 492.

According to plaintiff, Attorney Carey committed fraud by billing the Assigned Counsel Program for services she never provided to plaintiff and by making false representations to the Attorney Grievance Committee. Pl.'s Opp. at 4, ¶¶ 3–4, 6 ¶ 12.

Assumed true, this argument must be rejected. Even if Attorney Carey made knowing misrepresentations to the Attorney Grievance Committee and the Assigned Counsel Program, plaintiff cannot maintain a fraud claim based on Attorney Carey's misrepresentations to third parties. Accordingly, this claim fails as a matter of law.

## ii. **New York Judiciary Law § 487**

Next, plaintiff argues that he is entitled to summary judgment against Attorney Carey for alleged violations of § 487(1) of the New York Judiciary Law. Pl.'s Opp. at 1.

"Under Judiciary Law § 487(1), an attorney 'who [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party' . . . may be liable to the injured party for treble damages in

a civil action." *Bill Birds, Inc. v. Stein L. Firm, P.C.*, 149 N.E.3d 888, 890 (N.Y. 2020) (quoting N.Y. Judiciary Law § 487(1)).

Relief under Judiciary Law § 487 "is not lightly given." *Chowaiki & Co. Fine Art v. Lacher*, 115 A.D.3d 600, 601 (1st Dep't 2014). To recover under the statute, a plaintiff must show "egregious conduct or a chronic and extreme pattern of behavior on the part of the defendant attorneys." *Savitt v. Greenberg Traurig, LLP*, 126 A.D.3d 506, 507 (1st Dep't 2015).

Plaintiff claims that Attorney Carey violated § 487(1) of the Judiciary Law by making false representations to the Attorney Grievance Committee and by billing the Assigned Counsel Program for services she did not perform for plaintiff. Pl.'s Opp. at 5–7, ¶¶ 6–14.

This argument must also be rejected because neither of these allegations can support a claim under Judiciary Law § 487(1). First off, "the language of [§ 487] is aimed at a particular type of deceit or collusion—done by an attorney with the intent to mislead the court or a party." *Bill Birds, Inc.*, 149 N.E.3d at 891. And "[g]iven [§ 487]'s origins and purpose, it provides a particularized civil remedy . . . for a specialized form of attorney misconduct occurring during the pendency of litigation." *Id.* at 891–92.

Plaintiff has not identified sufficient evidence in the available record from which a reasonable juror could conclude that Attorney Carey intended to deceive plaintiff or any court in making the alleged misrepresentations to the

Attorney Grievance Committee or the Assigned Counsel Program. *See Cullin v. Spiess*, 122 A.D.3d 792, 793 (2d Dep't 2014) (granting summary judgment in attorney's favor on Judiciary Law § 487 claim where plaintiff offered no evidence of the attorney's "intent to deceive the plaintiff"); *Gillen v. McCarron*, 126 A.D.3d 670, 671 (2d Dep't 2015) (same).

And "'[s]ince Judiciary Law § 487 authorizes an award of damages only to "the party injured," an injury to the plaintiff resulting from the alleged deceitful conduct of the defendant attorney is an essential element of a cause of action based on a violation of that statute.'" *Gumarova v. L. Offs. of Paul A. Boronow, P.C.*, 129 A.D.3d 911, 911 (2d Dep't 2015) (quoting *Rozen v. Russ & Russ, P.C.*, 76 A.D.3d 965, 968 (2d Dep't 2010)).

Thus, even assuming that Attorney Carey's misrepresentations to the Assigned Counsel Program could be construed as an attempt to deceive the court in connection with plaintiff's underlying criminal proceedings, there is insufficient evidence from which a reasonable juror could conclude that *plaintiff* was injured by those misrepresentations. Accordingly, to the extent plaintiff's complaint can be liberally read to include a claim for violations of Judiciary Law § 487, that claim must be dismissed.

### 2. State-Law Legal Malpractice Claim

Finally, the parties have cross-moved for summary judgment on plaintiff's state-law legal malpractice claim—the only state-law claim that survived initial review before Judge Katz.

Attorney Carey argues, in part, that plaintiff cannot maintain his legal malpractice claim because he has been convicted of the state-court criminal charges brought against him. Carey Mem. at 9–10. In opposition, plaintiff maintains that he is entitled to relief "to cure all of the legal malpractice claims that occurred before the guilty determination" and "regardless of whether or not the criminal conviction was overturned." Pl.'s Add'l SMF at ¶¶ 10–11.

Contrary to plaintiff's contentions, New York law makes it clear that he cannot maintain a legal malpractice action while his criminal conviction remains valid. The New York Court of Appeals has held that criminal clients asserting legal malpractice claims must "plead and prove that [their] conviction was due to the[ir] attorney's actions alone and not due to some consequence of [their] guilt." *Britt v. Legal Aid Soc., Inc.*, 741 N.E.2d 109, 112 (N.Y. 2000).

However, "[i]n order to open the door for even a colorable claim of innocence, criminal defendants must free themselves of the conviction, for the conviction precludes those potential plaintiffs from asserting innocence in a civil suit." *Id.* Consequently, "legal malpractice claims arising out of criminal

proceedings. . . accrue[ ] . . . [only] when the criminal proceeding is terminated, *i.e.*, on the date when the indictment against the plaintiff is dismissed." *Id.* at 110.

This body of law is fatal to plaintiff's claim, at least right now. It is undisputed that plaintiff was convicted in state court and that he has appealed from that conviction. Carey SMF ¶ 30 (citing Dkt. No. 61-33). Absent any evidence that plaintiff's conviction has been vacated and that the underlying indictment against him has been dismissed, plaintiff's state-law legal malpractice claim fails as a matter of law and must be dismissed.

## V.    CONCLUSION

Therefore, it is

ORDERED that

1. Attorney Carey's motion for summary judgment (Dkt. No. 61) is GRANTED in part;

2. Plaintiff's cross-motion for summary judgment (Dkt. No. 86) is DENIED; and

3. Plaintiff's state-law claims against Attorney Carey are DISMISSED without prejudice.[7]

---

[7] Where, as here, the claim that has not yet accrued (because plaintiff's conviction has not been vacated), the underlying claim must be dismissed without prejudice. *See, e.g.*, *Mercedes-Benz Fin. Servs. USA, LLC v. City of N.Y.*, 770 F. Supp. 3d 643, 667 (S.D.N.Y. 2025) (collecting cases).

The Clerk of the Court is directed to terminate the pending motion and terminate Attorney Carey as a defendant in this action.

IT IS SO ORDERED.

Dated:  July 20, 2026
        Utica, New York.

David N. Hurd
U.S. District Judge